UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| TERRI A. LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No: 4-16-cv-77-CHS |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

I. Introduction

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner's final decision denying Terri Lewis' ("Plaintiff") claim for Disability Insurance Benefits ("DIB"), as provided by the Social Security Act.

The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit [Doc. 17]. Pending before the Court are Plaintiff's Motion for Judgement on the Pleadings [Doc. 18] and Defendant's Motion for Summary Judgment [Doc. 22].

For the reasons stated herein, the Court **AFFIRMS** the Commissioner's decision. Accordingly, the Court **DENIES** Plaintiff's Motion [Doc. 18] and **GRANTS** Defendant's Motion [Doc. 22].

II. Background

    A. Procedural History

On July 11, 2007, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434 (Tr. 14). Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration ("SSA"). Plaintiff's claim was denied both initially and on reconsideration (Tr. 67-69, 71-72). In December 2009, an administrative law judge ("ALJ") found Plaintiff not under a "disability" as defined in the Act (Tr. 14-21).

Plaintiff appealed that decision to the United States District Court of Western Tennessee, which remanded the case to the Commissioner for further evaluation (Tr. 587-94, 598). Upon remand, on July 15, 2015, the ALJ found Plaintiff not disabled (Tr. 495-508). On May 4, 2016, the Appeals Council denied Plaintiff's request for review (Tr. 484-88). Thus, Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.

    B. Relevant Facts

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff is currently a 38-year-old individual who performed past relevant work as a customer complaint clerk. Plaintiff was 27 years old at the time of her alleged onset of disability on September 29, 2006.

    1. *Plaintiff's Testimony and Medical History*

The ALJ has thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters as relevant to the

analysis of the parties' arguments.

### 2. *The ALJ's Findings*

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2. The claimant has not engaged in substantial gainful activity since September 29, 2006, the alleged onset date (20 CFR 404.1571, *et seq*.) of disability through the date she was last insured, September 30, 2010.

3. Through the date of last insured, the Plaintiff has severe impairments of fibromyalgia, headaches, and degenerative disc disease.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. The claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours per eight-hour workday; sit six hours per eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl.

6. Plaintiff is able to perform her past relevant work as a customer complaint clerk, which is a skilled SVP 7 occupation performed at the sedentary level. Dictionary of Occupational Titles, #241.367-014.

7. Considering the claimant's age, education, work experience, and residual functional capacity, including her limitations on the ability to perform a full range of light work, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 29, 2006, through September 30, 2010 (20 CFR 404.1520(f)).

[Tr. 497, 501, 506, 508].

III. Analysis

A. Standard of Review

To establish disability under the Social Security Act, a claimant must establish she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity she is not disabled; (2) if the claimant does not have a severe impairment she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment she is disabled; (4) if the claimant is capable of returning to work she has done in the past she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which she can perform considering her age, education and work experience. *Richardson v. Sec'y, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389 (1971); *Landsaw v. Sec'y, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings, such findings must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

B. Discussion

The focus of this appeal lies on the fourth step of the five-step analysis undertaken by the ALJ to determine whether the Plaintiff is disabled. Plaintiff contests the ALJ's determination that her residual functional capacity will permit her to engage in a limited range of light work which will, in turn, permit her to perform her past relevant work as a customer complaint clerk. Plaintiff makes two arguments in support of her contention that the ALJ incorrectly determined her residual functional capacity: (1) the ALJ failed to follow the treating physician rule by not giving the opinion of Plaintiff's treating physicians controlling weight; and (2) the ALJ's residual functional capacity is inconsistent with substantial evidence presented in the longitudinal medical record.

1. *Treating Physician Rule*

The Regulations require an ALJ to "evaluate every medical opinion" regardless of its source. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, every medical opinion is not treated equally, and the Regulations describe three classifications for acceptable medical opinions: (1) nonexamining sources; (2) nontreating sources; and (3) treating sources. A nonexamining source is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." 20 C.F.R. §§ 404.1502, 416.902. A nontreating source is described as "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." *Id.* Finally, the Regulations define a "treating source" as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or

evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Id*.; *accord Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

An ALJ is required to give a treating source's medical opinion "controlling weight" if: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007). If the ALJ does not give a treating source's opinion controlling weight, she must determine the appropriate weight to give the opinion based on the length, frequency, nature, and extent of the treatment relationship; the treating source's area of specialty; and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6)); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citations omitted). In June 2007, Thomas John, M.D., Plaintiff's treating rheumatologist, commented in a treatment note that "Terri asked me about work, and I feel like with everything going on with her at this point in time, it is hard to expect this lady to be able to work . . . ." (Tr. 313, 505). At an initial evaluation, in April 2009, Laxmaiah Manchikanti, a pain management physician, recorded Plaintiff's "perceived" limitations as being able to lift less than 10 pounds, sit for 5 to 10 minutes, stand for 5 to 10 minutes, and walk 1 block (Tr. 477, 505). In March 2015, Marni Groves, N.P., completed an opinion that was signed by Kevin Myers, M.D., in May 2015 (Tr. 506, 910-12). The form indicated that Plaintiff could occasionally lift 5 pounds and gross manipulate, and never bend or fine manipulate (Tr. 910). Plaintiff argues that the ALJ should have given these opinions controlling weight under the treating physician rule.

The Commissioner argues that these providers' opinions are not entitled to controlling weight, and the Court agrees. Dr. John's comment that he did not believe Plaintiff could work at this time is not a medical opinion; it is a vocational opinion. An opinion that Plaintiff is unable to work is not entitled to special significance, as it is a statement on an issue reserved to the Commissioner (Tr. 505). *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472 (6th Cir. 2014) (citing *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)); *Johnson v. Comm'r of Soc. Sec.,* 535 F. App'x 498, 505 (6th Cir. 2013) (citing SSR 96-5p). Opinions on matters that are reserved to the Commissioner are not "medical opinions" as defined in the regulations. *See Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 476 (6th Cir. 2012) (ALJ correctly ruled that the treating physician's conclusion expressed in a single-sentence note ("due to pain is unable to work") was one properly reserved to the Commissioner) (citing 20 C.F.R. § 404.1527). As such, the "treating physician" rule does not apply.

Dr. Manchikanti provided his opinion as to Plaintiff's "perceived" limitations based on Plaintiff's subjective complaints during a first time visit (Tr. 477). "The ALJ is not required to simply accept the [opinion] of a medical examiner based solely on the claimant's self-reports of symptoms, but instead is tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b)); *Bell v. Barnhart*, 148 F. App'x 277, 285 (6th Cir. Aug. 7, 2014) (declining to give weight to a doctor's opinion that was only supported by the claimant's reported symptoms); *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013) (per curiam) ("[I]t appeared to be based primarily on Keeler's subjective complaints, and it was contradicted by other evidence in the record . . . ."). Dr. Manchikanti's note is not a medical

opinion, but a recitation of Plaintiff's subjective complaints (Tr. 477). Second, even assuming that the statements were a medical opinion, Dr. Manchikanti was not a treating physician at that time (Tr. 505). *See Rudd*, 531 F. App'x at 729 (doctor who examined claimant four times in two years was not a treating physician). The ALJ properly noted that the recorded limitations occurred at the initial examination (Tr. 477, 505). As such, Dr. Manchikanti was not a treating physician at that time and the "treating physician" rule would not apply.

Finally, the ALJ properly evaluated Ms. Groves' and Dr. Myers' opinion (Tr. 506, 910-12). As admitted by Plaintiff at the administrative hearing, Dr. Myers never examined or even met Plaintiff (Tr. 543-44). As such, Dr. Myers could never be considered a treating physician. *See Rudd*, 531 F. App'x at 729. Further, Ms. Groves is a nurse practitioner, which is not an acceptable medical source (Tr. 506). *See* 20 C.F.R. §§ 404.1513, 404.1527 (2016); SSR 06-3p. Because Ms. Groves is an "other" source, the "treating physician" rule does not apply. *Id.*

Accordingly, the Court concludes the ALJ did not violate the treating physician rule when she did not accept the opinions of Dr. John, Dr. Manchikanti, Marni Grover, N.P., and Dr. Myers as opinions of a treating physician entitled to controlling weight.

2. *The ALJ's Assessment of Plaintiff's Residual Functional Capacity*

In finding Plaintiff capable of a range of light work, the ALJ considered the record as a whole, including Plaintiff's subjective complaints (Tr. 495-508). The ALJ determined that Plaintiff's allegations regarding her limitations were not supported by the record (Tr. 502) and were inconsistent with the record as a whole, including the medical opinions, her medical treatment, and the medical evidence (Tr. 497-506). The ALJ also considered Plaintiff's subjective complaints in compliance with the regulations at 20 C.F.R. § 404.1529 (2016). To

analyze a claimant's subjective complaints of pain, an ALJ examines the following: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. 20 C.F.R. § 404.1529 (2016).

While the "treating physician" rule does not apply to the opinions of Dr. John, Dr. Manchikanti, Marni Grover, N.P., and Dr. Myers, the ALJ evaluated their opinions in accordance with agency policy and found them entitled to little weight (Tr. 506). The ALJ noted that, subsequent to Dr. John's statement that he did not see how Plaintiff could work, Plaintiff's rheumatoid arthritis was brought under control and her fibromyalgia improved (Tr. 253, 257, 306, 309, 361, 454, 458, 461, 505, 829, 836, 839, 845, 848). As such, the ALJ properly gave Dr. John's vocational statement little weight (Tr. 505). Ms. Groves and Dr. Myers opined that Plaintiff could occasionally lift five pounds and gross manipulate, and never bend or fine manipulate (Tr. 910). When asked for objective evidence to support the limitations, they cited rheumatoid arthritis, fibromyalgia, chronic fatigue, tachycardia, and headaches, and referred the reader to the treatment notes (Tr. 910-11). However, the treatment notes do not support the degree of limitations. The proposed limitations also conflicted with Lester's daily activities and the majority of other medical evidence in the record . . . ."). Ms. Groves and Dr. Myers opined that Plaintiff could only lift five pounds occasionally, but she retained full strength (Tr. 169-70, 242, 252, 257, 262, 282, 351, 474, 479, 835, 839, 844, 910). Plaintiff had no edema or synovitis, and demonstrated normal gait, full range of motion, and intact sensation (Tr. 169-70, 239-40, 242, 249, 252-53, 255, 257, 262-63, 266, 282-83, 332, 351, 434-35, 452, 454, 456, 465, 474-75, 479-80, 803, 807, 816,

818, 820-21, 826, 827, 829, 832, 835, 838-39, 841, 843-44, 846-47). They also indicated that she could never fine manipulate, but her hobbies included sewing (Tr. 474, 910). They also suggested that Plaintiff's concentration was impaired by her pain, but she had no mental status changes and retained normal attention, concentration, and cognitive functioning (Tr. 911, 230, 239, 242, 252, 257, 262, 452, 456, 465, 528, 807, 816, 821, 829, 835, 839, 844)). As such, the ALJ properly evaluated the opinion and gave it little weight (Tr. 506).

The ALJ also considered the opinion evidence of the agency examining physician and non-examining physicians (Tr. 498, 503, 505-06). In August 2007, Dr. Keown performed a consultative examination, and the ALJ found the doctor's opinion entitled to significant weight (Tr. 498, 503, 505). During the consultative examination, Plaintiff exhibited full strength and no active synovitis (Tr. 282-83). Dr. Keown then opined that Plaintiff could lift 25 pounds occasionally and 12 pounds frequently, sit for 8 hours, and stand/walk for 4 to 6 hours (Tr. 283). Following the consultative examination, state agency medical consultants reviewed the medical records and opined that Plaintiff could perform a range of light work (Tr. 298-05, 337- 44, 505). *See Gustafson v. Comm'r of Soc. Sec.*, 550 F. App'x 288, 289 (6th Cir. 2014) (finding that the ALJ may consider the opinions of non-examining state agency medical consultants); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)); SSR 96-2p (finding of fact and opinions by non-examining State agency doctors is expert evidence that must be considered). In September 2007, Reeta Misra, M.D., reviewed the medical records and opined that Plaintiff could perform light work with occasional postural activities (Tr. 299-300). In February 2008, Joe Allison, M.D., reviewed the record and found that Plaintiff could perform light work with

frequent postural activities (Tr. 338-39). The ALJ found Dr. Misra's opinion entitled to great weight and Dr. Allison's opinion entitled to lesser weight (Tr. 505). Consistent with Dr. Misra's opinion, the ALJ limited Plaintiff to occasional postural activities (Tr. 300, 501).

In addition to the medical opinions, the ALJ properly weighed Plaintiff's treatment for her allegedly disabling impairments (Tr. 26, 28, 32-33). *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (Modest treatment is "inconsistent with a finding of total disability."). The medical records show that Plaintiff's impairments improved with treatment (Tr. 498-99, 502-05). *See Smith v. Comm'r of Soc. Sec.*, 564 F. App'x 758, 763 (6th Cir. 2014) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (evidence that medical issues can be improved when using prescribed drugs supports denial of disability benefits)). Late in the relevant time period, Plaintiff was diagnosed with tachycardia, but this impairment was quickly brought under control through medication (Tr. 499, 826). Plaintiff alleged disability based on rheumatoid arthritis and fibromyalgia, but the records show her impairments improved with treatment (Tr. 103, 498, 502-05). Plaintiff successfully underwent gastric bypass to improve her obesity (Tr. 234-35). Plaintiff's subsequent weigh loss improved her rheumatoid arthritis and fibromyalgia (Tr. 240, 306, 309, 458). Plaintiff's rheumatoid arthritis was controlled and stable with treatment (Tr. 240-41, 243, 253, 256-57, 306, 309, 361, 454, 458, 461, 822, 829, 836, 839, 845, 848). Plaintiff's representative admitted that the rheumatoid arthritis was not a severe impairment (Tr. 499, 540-41). Plaintiff's fibromyalgia also improved with medication (Tr. 253, 257, 309, 454, 845). Epidural injections improved Plaintiff's pain (Tr. 468-69, 672, 674, 503-05). Usually, she did not require narcotics for her pain (Tr. 503, 505, 829, 834, 836). Plaintiff

testified that she had frequent headaches, but the medical records show that she only made sporadic complaints and repeatedly denied any headaches (Tr. 279, 504, 534, 759, 763, 766, 769, 773, 777, 782, 786, 789, 795, 798, 802, 821, 829, 835, 839, 844, 847, 853, 856, 861, 868, 875, 882, 889, 896, 903). Plaintiff's improvement with treatment was inconsistent with the extent of her subjective allegations (Tr. 498-99, 502-05). The ALJ also determined that Plaintiff's allegations were not supported by the medical evidence (Tr. 498-99, 503-04). *See Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1529); *Rudd*, 531 F. App'x at 726-27. Plaintiff alleged significant lifting, sitting, standing, and walking limitations based on rheumatoid arthritis and fibromyalgia, but the physical examinations revealed a normal gait, full strength, full ranges of motion, and intact sensations (Tr. 169-70, 239, 242, 249, 252, 257, 262-63, 266, 282, 332, 351, 434-35, 456, 465, 474-75, 479-80, 498-99, 503, 532, 803, 807, 816, 818, 821, 829, 832, 835, 838-39, 841, 844, 847). While Plaintiff demonstrated sufficient positive tender points to support a diagnosis of fibromyalgia, she also had positive control points – evidence that detracted from her subjective allegations (Tr. 450, 452). Control points do not correspond to fibromyalgia trigger points and should not be positive. Plaintiff's lumbar MRI revealed only mild degenerative changes (Tr. 386, 801, 809). A cervical CT was normal (Tr. 271). Cervical, thoracic, and lumbar x-rays were normal (Tr. 388-90). Plaintiff took Lyrica, Savella, Flexeril, Tylenol #3, and hydrocodone-acetaminophen as needed and was reported to tolerate her medications well. (Tr. 837, 834, 827). Plaintiff told her medical providers that x-rays revealed a mass in her right humerus, but the ALJ properly found that this complaint was not supported by the record (Tr. 273, 306, 329, 331, 505). Plaintiff also complained of difficulty

concentrating, but she had no mental status changes and demonstrated intact concentration and cognition (Tr. 230, 239, 242, 252, 257, 262, 452, 456, 465, 528, 807, 816, 821, 829, 835, 839, 844). *See Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013) (Plaintiff claimed crying spells and low energy, "[y]et there was no objective evidence to support these complaints.") (citation omitted). As such, the ALJ properly found the objective evidence inconsistent with Plaintiff's allegations (Tr. 498-99, 503-04). Plaintiff claims that she would be disabled because she could not use her arms due to swelling in her fingers, hands, and forearms. *See* Pl.'s Br. at 9-10. Contrary to Plaintiff's claims of significant swelling, she denied rheumatoid arthritis flare-ups, and physical examinations consistently showed no edema or synovitis (Tr. 239-40, 252-53, 255, 257, 262-63, 282-83, 351, 465, 452, 454, 456, 803, 820-21, 826-27, 829, 832, 834-35, 837, 841, 843-44, 846). X-rays of her hands were normal (Tr. 238, 832). A left wrist MRI showed no evidence of any rheumatologic process (Tr. 347-48). The ALJ properly evaluated Plaintiff's impairments and found no limitations in using her fingers, hands, or forearms.

The ALJ also identified other inconsistencies within the record (Tr. 500, 502-04). After her alleged onset date of disability, she continued to work with children and at the church, and admitted "[o]ver the summer [sic] with pretty busy schedule with youth ministry" (Tr. 359, 474, 791). She took a trip to Disney World (Tr. 834). Plaintiff's hobbies also included sewing, which is inconsistent with an inability to use her arms and hands (Tr. 474). These activities did not support her allegations of disabling pain. The ALJ properly weighed the inconsistencies in the record to evaluate Plaintiff's subjective claims (Tr. 500, 502-04).

Consequently, based on the opinions of the examining consultative physician and the non-examining agency physicians, a review of the medical records as a whole, and a review of the Plaintiff's daily activities, the Court concludes there is substantial evidence in the record to support the ALJ's determination of the Plaintiff's RFC. Therefore, even if the Court were to have reached a different result upon a *de novo* review of the evidence, the Court must affirm the decision of the Commissioner.

    C. <u>Conclusion</u>

Having reviewed the administrative record and the parties' briefs filed in support of their respective motions, the Court concludes that there is substantial evidence in the record to support the ALJ's findings and the Commissioner's decision. Accordingly, Plaintiff's Motion for Summary Judgment [Doc. 18] is **DENIED**; and Defendant's Motion for Summary Judgment [Doc. 22] is **GRANTED**. Judgment shall be entered in favor of the Commissioner.

**IT IS SO ORDERED.**

                                      s\ *Christopher H. Steger*
                                      UNITED STATES MAGISTRATE JUDGE